## JORDÁN v. GÓMEZ ET AL.

### APPEAL from the District Court of Arecibo.

No. 587.—Decided March 21, 1912.

LIS PENDENS NOTICE IN REGISTRY—EFFECT THEREOF ON SUBSEQUENT PURCHASER—
THIRD PARTIES.—Where *lis pendens* notice of an action claiming the title
to a property has been entered in the registry of property subsequent pur-
chasers of the property cannot allege that they had no knowledge of the
suit and must abide by the result of the suit especially where the registry
shows certain notices of attachment an examination of which would have
shown to the subsequent purchasers that the property claimed belonged to
the plaintiff.

The facts are stated in the opinion.

*Mr. Manuel F. Rossy* for appellant.

*Messrs. Antonio Suliveres* and *Luis Llorens Torres* for
respondents.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an action in intervention of ownership.

Manuel Jodrán Correa filed a complaint in the District
Court of Arecibo against Federico A. Gómez, alleging that
in an action brought in the same court by Gómez against
Román for the recovery of a certain sum, judgment was ren-
dered in favor of Gómez, who, for the purpose of securing the
satisfaction thereof, attached, as belonging to Román, a farm,
consisting of 29 *cuerdas,* situated in *barrio* Caguanas, in the
municipal district of Utuado, which property included 20 *cuer-
das* belonging to the intervenor, Jordán. The complaint fur-
ther alleged that Jordán has been in possession of the 20
*cuerdas* as the sole owner thereof.

Román was duly summoned to appear, but failing to file
an answer, judgment by default was entered against him in
pursuance of the law. Gómez, the other defendant, filed his
answer on December 16, 1908, denying that the 20 *cuerdas*
referred to in the complaint were part of the 29 *cuerdas*
which he had attached, and also denying that the title to the

20 *cuerdas* was in Jordán, the third party intervening. Moreover, that on April 12, 1880, the property attached was purchased by Juan Bautista Román from José Julian Román, the title whereof appears recorded in the name of Juan Bautista Román, and that he (Gómez) acquired the property in question at a public sale held on December 9, 1880, without any opposition on the part of Jordán.

The hearing having been had the court rendered judgment against the intervenor, who then took this appeal.

Our conclusion, after a careful review of the pleadings and the evidence, is that the fact that the 20 *cuerdas* claimed by Jordán are part of the 29 *cuerdas* attached by Gómez has been fully established.

There is then no doubt as to the identity of the property, so the only question left is to determine who is the true owner of the 20 *cuerdas,* whether Jordán or Gómez.

It has been proven that in a suit filed by Gómez against Juan Bautista Román, Gómez obtained a judgment in his favor, and that in order to secure the satisfaction thereof, he caused an attachment to be levied on the farm of 29 *cuerdas,* the title to which appeared recorded in the name of Juan Bautista Román.

December 9, 1908, was set for the public sale of the farm. The suit in intervention brought by Jordán against Román and Gómez was filed in the office of the secretary of the district court two days before the sale, or on December 7, 1908, and a record of the same was entered in the registry of property one day before the sale, or on December 8, 1908. The public sale took place on the day appointed, so then, when Gómez bought the property and took the title to the registry to be recorded he knew from the books of the registry that Jordán was claiming judicially a portion of the property as the sole owner thereof; therefore he cannot now pretend to be an innocent third party with regard to the purchase of the 20 *cuerdas.* He purchased the property with full knowledge of

the pendency of the suit, and, consequently, he should abide by the findings of fact therein.

Let us now see what these findings are. The evidence introduced shows:

That on or about the year 1880 José Julián Román sold to Juan Bautista Román the farm of 29 *cuerdas*, which conveyance was recorded in the former registry of mortgages. See deed executed in Utuado on April 12, 1880, before Notary Alfonzo, and copies of records certified to by the Registrar of Property of Arecibo, which form part of the transcript.

That under a contract entered into on October 2, 1898, Juan Bautista Román deeded over to Juan Antonio Santiago, among other properties, the farm of 29 *cuerdas*. This conveyance was not recorded in the registry of property. See private contract made in writing at the above-given date and records of proceedings of conciliation held on July 15, 1899, in the Municipal Court of Utuado forming part of the record.

That about 1902, Tomás Negrón filed a suit against Juan Bautista Román and caused an attachment to be levied on the farm of 29 *cuerdas*, as belonging to Román, whereupon Santiago commenced an action in intervention against both Negrón and Román, in which he obtained a decree in his favor, declaring that the property belonged to Santiago and not to Román. See certified copy of proceedings, pages 33, and following of the transcript.

That in a suit to recover a certain sum filed by Manuel Jordán Correa against Juan Antonio Santiago, judgment was rendered in favor of Jordán, who for the purpose of securing the satisfaction thereof, caused an attachment to be levied on a farm of 20 *cuerdas* which had been awarded to Jordán on October 3, 1905. It has been proven, as we have already stated, that the property of 20 *cuerdas* is part and parcel of the property of 29 *cuerdas*. See deed executed in Utuado on November 3, 1905, before Notary Alfonzo forming part of the record.

. And that about 1905, in a suit filed against Juan Bautista Román, the plaintiff, Agustin Viruet, attached the property of 20 *cuerdas* as the property of the defendant, whereupon Manuel Jordán Correa brought a suit in intervention claiming the title to the said 20 *cuerdas,* which suit was decided in favor of ·Jordán on November 6, 1905. See certified copy of record found on page 27 and following of the transcript.

The evidence shows, then, that although the title to the 29 *cuerdas* was once in Juan Bautista Román, in whose name it was recorded and continued to be recorded in the registry of property, the ·fact is that since 1898 Román's title passed from him to Santiago and since 1905 from Santiago to Jordán. .

The result of the evidence prejudices the defendant Gómez, because, as we have already shown, he cannot pretend to be an innocent third party since, when purchasing the property, he knew from the registry that the suit was pending and accepted the attending risk.

The cautionary notice of the pendency of the action was entered in accordance with the provisions of section 91 of the Code of Civil Procedure, a literal copy of which reads as follows:

"Section 91.—In an action affecting the title or the right of possession of real .property, the plaintiff at the time of filing the complaint, and the defendant at the time of filing his answer, when affirmative relief is claimed in such answer or at any time afterwards, may file for record with the registrar of the district in which the property or some part thereof is situated a notice of the pendency of the action containing the names of the parties, the object of the action or defense, and a description of the property affected thereby. From the time of filing such notice for record only shall a purchaser or encumbrancer of the property affected thereby be deemed to have constructive notice of the pendency of the action, and only of its pendency against parties designated by their real names."

And commenting on certain provisions of laws similar to

our own laws, the Supreme Court of California has laid down the following doctrine:

"If before the foreclosure sale the principal commenced a suit to assert his rights and filed a notice of *lis pendens,* such notice charged the purchasers at the foreclosure sale with notice of the matters litigated in said suit; and, therefore, they are not innocent purchasers." *Randall* v. *Duff,* 79 Cal., 116.

"If A brings an action against B to recover possession of land, and files a *lis pendens,* and during the pendency of the action and after the *lis pendens* is filed, C purchases the land of B and judgment is afterwards rendered against B, C is bound and stopped by the judgment." *Calderwood* v. *Tevis et al.,* 23 Cal., 336.

But there are other circumstances which have also been taken into consideration by us before reaching the above conclusion.

Gómez's interest in this suit, if any, would depend absolutely upon the records of the registry of property, and this being the case, it is only fair that all the facts appearing in the registry, both favorable and adverse to him, be taken into consideration.

In addition to the cautionary notice of the suit in intervention, the effect of which we have hereinbefore considered and determined, the registry showed the notices of two attachments, which the registrar in the certificates issued by him in this case made to appear as liens on the premises, and as such are specifically mentioned in the notarial instrument executed by the marshal of the district in favor of the defendant, Gómez, on January 22, 1909, recorded on April 15, 1909.

The first of the aforesaid attachments was levied at the instance of Tomás Negrón in 1902, and it was upon the occasion of filing the same for record that the property of 29 *cuerdas* recorded in the former registry of mortgages was transferred to the modern books of the registry. The second attachment was levied in 1905 at the petition of Agustín Viruet. If the defendant, as it is natural and proper in such cases, made a search of the origin of the attachments, we

must then presume that the records of the suit wherein the attachments were decreed were examined by him, and if he did make such an examination the conclusion necessarily follows that he proceeded with full knowledge of the fact that the title of the property he sought to attach was not in Román, his debtor.

Having given all the facts in this case the fullest consideration, justice and the law rightly interpreted required that a decree be rendered finding for the plaintiff and against the defendant, and that, accordingly, this appeal be sustained and the judgment reversed, and another rendered by this Supreme Court in lieu thereof holding that the title to the 20 *cuerdas* of land described in the complaint as being a part of the property of 29 *cuerdas* recorded in the registry is neither in Juan Bautista Román nor in Federico A. Gómez, but in Manuel Jordán Correa, and that, consequently, the cautionary notice of the attachment and record of the conveyance entered in the registry in favor of the plaintiff, Gómez, should be ordered canceled.

As to the costs we believe each party should pay those incurred by him.

*Reversed.*

Justices MacLeary and Wolf concurred.

Chief Justice Hernández and Justice Aldrey dissented.

DISSENTING OPINION OF MR. CHIEF JUSTICE HERNÁNDEZ CONCURRED IN BY MR. JUSTICE ALDREY.

On December 7, 1908, Manuel Jordán Correa brought a suit in the District Court of Arecibo against Federico A. Gómez and Juan Bautista Román claiming title to certain real property, the facts alleged being as follows:

First. That Federico A. Gómez obtained a judgment by default on January 31, 1907, in the said court against Juan B. Román, wherein the latter was adjudged to pay to Gómez the sum of $600, with interest at 6 per cent per annum from

July 5, 1906—date on which the complaint was filed—until the entire sum shall have been paid, and also $5.85 for costs and other expenses incurred on the date the judgment was rendered.

Second. That upon an order of execution for the enforcement of the judgment on November 13, 1908, the marshal of said court resolved upon holding a public auction for a period of 20 days for the purpose of disposing of at auction the farm upon which the attachment had been levied, as the property of the defendant, a description of which follows:

"Twenty-nine *cuerdas* and a *cuadro* and a half of land situated in *barrio* Caguana of Utuado, containing two houses made of native lumber, with corrugated-iron roofs, the metes and bounds of which are as follows: From an *ortegón* stake, on the margin of the Caguana River; thence up the river to another *ortegón* stake situated alongside of a *guama* tree; thence along the property of José Cortés, up a hill to a *tabonuco* tree; thence bordering on San Andrés Plantation, in an easterly direction, to another *ortegón* stake following the sinuosities of the land, down the slope of said hill; thence in a westerly direction along the border of the estate of José Román to an *ortegón* stake; thence, in a northerly direction, along the same property to another *ortegón* stake at the foot of a *yagrumo* tree, and thence to the starting point."

Third. That the above-described property includes another one of 20 *cuerdas,* equivalent to 7 hectares, 86 ares, and 8 centares, planted in coffee, bananas, plantains, and grass, on which stands a house made of native lumber with corrugated-iron roof, which property at present is bounded on the east and south by lands of Nicolás Ríos; on the west by property of the estate of José María Malaret, and on the north by more lands belonging to the principal estate, and that the possession and ownership thereof are in the plaintiff who possesses it as sole owner.

The complaint closes with the prayer that after due legal proceedings the property of 20 *cuerdas,* above described, be declared to be the exclusive property of the plaintiff, and

that, with respect thereto, orders be given for the cancellation of the attachment levied thereon, and that whatever judgment should be rendered a record thereof be entered in the registry of property.

The defendant, Federico A. Gómez, in answering the complaint on December 17, 1908, which the other defendant, Juan Bautista Román, failed to do, alleged as first defense that he admitted the facts contained in the first and second paragraphs of the complaint, and generally and specifically denied all the others.

As a second defense he alleged that the defendant, Juan Bautista Román, acquired on April 12, 1880, the attached rural property described in the second paragraph of the complaint from José Julián Román, who, in this transaction, acted as the representative of his father, José Ramón Román, the ownership of which property is still on record in the Registry of Property of Arecibo in the name of said Juan Bautista Román, the records of the registry not showing that such title had been transferred, modified, annulled, or otherwise altered.

As a third defense he further stated that the property of 20 *cuerdas* was sold at auction on December 9, 1908, the day set for the public sale, no opposition having been made thereto by the plaintiff, Manuel Jordán Correa; and, as Federico A. Gómez was the only bidder, the property was awarded to him for the sum of $600, this being the amount which was to be paid to him by Juan Bautista Román, the title of the property thus passing to Gómez by virtue of this judicial sale.

The action came up for trial on the date appointed, and from the testimony introduced, as set forth in the statement of the case, it appears:

First. That by a public deed dated April 12, 1880, a record of which was entered in the former registry of mortgages on the 15th of the same month, which record was transferred to the modern books of the registry of property on Decem-

ber 19, 1901, José Julián Román, on behalf of his deceased
father, José Ramón Román, ratified the sale made by his
father to Juan Bautista Román, of 29 *cuerdas* and 1½ *cuadros*
of land situated in *barrio* Caguana, municipality of Utuado,
under the same boundaries given in the description of said
property made in the complaint.

Second. That under an agreement entered into by public
instrument dated October 2, 1898, between Juan Antonio San-
tiago and Juan Bautista Román, the former exchanged with
the latter 129½ *cuerdas* of land belonging to him, for three
tracts of land owned by Román, one of which measures 29
*cuerdas* approximately, with the metes and bounds set forth
in the deed which Román claimed to have; another one meas-
uring 30 *cuerdas*, and a third one measuring 40 *cuerdas,* more
or less; and, by virtue of this exchange, Román agreed to
release Santiago from the obligation of paying to Tomás
Jordán, in five instalments, the sum of 6,798.50 *pesos,* and to
pay back to Román 1,500 *pesos,* as follows: Four hundred
*pesos* in December of the years 1898, 1899, and 1900, and the
remaining 300 *pesos* in 1901, their respective properties *ad
interim* to be held as security for the said respective sums;
and it was to be well understood that, should any one of them
withdraw his consent to the agreement before the deeds were
executed, he would have to pay damages to the other in the
sum of 1,000 *pesos.*

Third. That in proceedings to secure conciliation had be-
fore the municipal judge of Utuado on July 15, 1899, Juan
Antonio Santiago sued Juan Bautista Román to compel him
to execute in his favor a deed of exchange of land under the
private agreement entered into by them, and both parties
then agreed that, owing to the financial crisis existing, the
deed of exchange of land should be executed in December of
the said year, Santiago being allowed to pledge the property
given to Román in exchange as security for the 6,000 *pesos*
due Tomás Jordán out of the 6,795.50 *pesos* involved in the
said private agreement, the payment of which sum was to

be made at the rate of 1,500 *pesos* in December of the years 1899 and following, and under which agreement, upon execution of the deed, Román would not be under obligation to pay anything to Jordán, but to him who should own the claim which Santiago was to recognize under security of the property.

Fourth. That in a common suit at law brought in the Municipal Court of Utuado by Tomás Negrón against Bautista Román, a property was attached as belonging to Román which, according to the notice of said attachment entered in the registry of property, is the same property that Román had acquired under deed of April 12, 1880; an action having been brought by Juan Antonio Santiago claiming the ownership of said property under a contract of exchange entered into with Román, judgment was rendered on January 10, 1902, sustaining the action and directing that the attachment giving rise thereto be dissolved.

Fifth. That in an action for the recovery of a sum of money brought before the same Municipal Court of Utuado by Manuel Jordán Correa against Juan Antonio Santiago, Santiago was adjudged to pay to Manuel Jordán Correa the sum of $450 and the costs of the action; and, for the purpose of enforcing this judgment, an attachment was levied on the farm of 20 *cuerdas* referred to in the complaint as the property of Santiago, of which attachment no cautionary notice was entered in the registry of property *because said property did not appear recorded in favor of the defendant or of any other person;* and after announcing that the property was to be sold at public auction, the same was awarded to Manuel Jordán Correa on October 23, 1905, the marshal of the said municipal court executing in favor of Correa a full and sufficient title on the 3d of the following November.

Sixth. That in another action brought before said Municipal Court of Utuado by Agustín Viruet against Juan Bautista Román, to secure the collection of $500, an attachment was levied on the property acquired by Román under date

of April 12, 1880, a notice of which attachment was recorded in the registry; but an action having been brought by Manuel Jordán Correa against Viruet and Román, claiming the ownership of the property of 20 *cuerdas* which was awarded to him in the suit brought by him against Juan Antonio Santiago, the jury rendered a verdict on November 6, 1905, sustaining the claim of the third party.

Seventh. That for the purpose of enforcing the judgment rendered by the District Court of Arecibo on January 31, 1908, in the suit brought by Federico R. Gómez Valencia against Juan Bautista Román, wherein the latter was adjudged to pay the sum of $600 and legal interest and the costs of the suit, the marshal of the said court offered at public sale the property of 29 *cuerdas* and 1½ *cuadros* already described in the complaint and upon which an attachment had been levied for the purpose of securing the effectiveness of the judgment rendered, which attachment was also recorded in the registry. The said property having been awarded to the best bidder, Federico A. Gómez, on December 8, 1908, for his offer of $600, the title deed thereto, was executed in his favor on January 22, 1909, by the marshal of the court, the same being recorded in the registry of property on April 15 of that year.

Eighth. That on December 9, 1908, an entry was made in the Registry of Property of Arecibo of the notice of the suit brought by Manuel Jordán Correa claiming the exclusive ownership of the property of 20 *cuerdas* described in the complaint as a portion of the 29 *cuerdas* and 1½ *cuadros* of land, and seeking the cancellation of the attachment upon the entire estate levied in the suit brought by Federico A. Gómez Valencia against Bautista Román, which notice was filed in the registry on the morning of December 8, 1908.

Ninth. That in giving his testimony at the trial as a witness for Federico A. Gómez, Juan Bautista Román stated that he had exchanged three properties of 30, 40, and 29½ *cuerdas*, respectively, for another belonging to Arturo San-

tiago; that he had no title to the first two, but only to the third; for which exchange of property there was only a private document, which was never converted into a public deed, for the reason that Santiago owed him $700.

The trial being over, the court rendered an opinion and pronounced judgment, which literally reads as follows:

"In this suit the property claimed has not been identified with that which is the object of this suit; but even if it had been so identified, the case could not have been decided in favor of the plaintiff, for the reason that his claim is based on the title which Juan Bautista Román alleged to have had in the property under a contract of exchange entered into by him with Juan Antonio Santiago, and after examining the private contract of said exchange we observe that although there has taken place an actual delivery of several properties exchanged, certain stipulations were made regarding the manner of payment, and an agreement was also made that, as long as these stipulations were not complied with, the title would remain in the owners who were parties to the exchange, since no other interpretation may be given to the words used in the contract: *Quedando interinamente las propiedades de cada uno* (said estates, meantime, remaining the property of each).

"By virtue whereof judgment is this day pronounced in accordance with this opinion.

"Arecibo, February 3, 1910.

"(Signed)      RAMÓN QUIÑONES,
"*Judge.*"

"JUDGMENT.

"In this action claiming the title to a real property, the trial of which took place on December 10, 1909, Attorney D. J. E. Martínez Quintero appeared on behalf of the plaintiff and Antonio Suliveras on behalf of the defendant, Federico A. Gómez, the other defendant, Juan Bautista Román being in default. The entire testimony introduced by both parties was heard and counsel were given sufficient time to file, as they did, a full statement of their case. Upon consideration of both the evidence and the questions of law presented by counsel, the court is of the opinion that the facts and the law are in favor of defendants and against the plaintiff, and, therefore, dismisses the complaint.

"Arecibo, February 3, 1910.

"(Signed)      RAMÓN QUIÑONES,
"*Judge.*"

Manuel Jordán Correa appealed from said judgment to this Supreme Court.

We are willing to admit and to adopt as the ground upon which to base our decision on this appeal that the property of 20 *cuerdas*, the title to which is claimed by plaintiff in an action of ownership, is a part, as he alleges in his complaint, of the 29 *cuerdas* and 1½ *cuadros* of land first recorded in the Registry of Property of Arecibo in favor of Juan Bautista Román and afterwards in favor of Federico A. Gómez; but we cannot arrive at the conclusion that the third party, Manuel Jordán Correa, should be considered as the owner of. said property with respect to the defendant, Federico A. Gómez.

There is no question that, with respect to Juan Bautista Román and Tomás Negrón, Juan Antonio Santiago was the owner of the farm of 20 *cuerdas*, because that farm, as part of a larger estate belonging to Román, was, together with two other properties, exchanged under a bargain made by both on October 2, 1898, for another one owned by Santiago; also, because in conciliation proceedings held on July 15, 1899, Juan Bautista Román and Juan Antonio Santiago had agreed that each would execute to the other a deed transferring the title of the properties exchanged; and, because by judgment rendered on January 10, 1902, in an action claiming ownership brought in the Municipal Court of Utuado by Juan Antonio Santiago against Tomás Negrón and Juan Bautista Román, it was held that the title to the farm of 29 *cuerdas* and 1½ *cuadros* was in the third party, Juan Antonio Santiago.

In the face of such conclusive evidence Juan Antonio Santiago, so far as Juan Bautista Román and Tomás Negrón are concerned, was the owner of the farm containing 29 *cuerdas* and 1½ *cuadros* of land, because Román and Santiago were the contracting parties in the bargain of exchange of properties, both of whom and Negrón were parties to the action brought by Santiago claiming ownership of the same

farm, and all three are subject to the authority of *res judicata* appertaining to the judgment which declared that the title claimed was in Santiago, both Román and Negrón being barred from invoking the capacity of third parties.

But inasmuch as the contract of exchange was not nor could have been recorded in the Registry of Property of Arecibo because such contract had not been reduced to a public instrument, nor had the judgment holding that the title was in Juan Santiago been recorded in said registry, Juan Bautista Román continued to appear in the registry as the owner of the farm in question with capacity to dispose of the same.

It matters little whether or not in the suit brought by Manuel Jordán Correa against Juan A. Santiago the court awarded to Correa 20 *cuerdas* out of the property of 29 *cuerdas* and 1½ *cuadros* and that the marshal of the Municipal Court of Utuado executed a title to Correa on November 3, 1905, because if the registry showed that the owner of the property was not Santiago but Román, the marshal, as the agent of Santiago, could not have executed such a deed in favor of Jordán Correa without subjecting him to the contingency of a lawsuit, like this one, where the validity of that deed, as regards a third party, such as Federico A. Gómez, is contested.

The title executed to Manuel Jordán Correa on November 3, 1905, produces legal effects with respect to Agustín Viruet and Juan Bautista Román, against whom Jordán Correa brought the suit claiming ownership, decided in Correa's favor; but such title cannot operate to the prejudice of third parties such as Gómez, who was not a party to that suit and as to whom, according to the Registry of Property of Arecibo, Juan Bautista Román was and continued to be the owner of the farm of 29 *cuerdas* and 1½ *cuadros*.

It was to that registry of property and not to the municipal court, nor to the district courts, nor to the marshal of such courts, nor to newspapers of more or less circulation,

nor to persons claiming ownership, where Gómez had to go in order to ascertain and verify who was the owner of the farm which he was seeking to put up at auction for the purpose of collecting the sum Román owed him.

The property appeared recorded in favor of Juan Bautista Román; therefore, when on January 22, 1909, the marshal of the District Court of Arecibo conveyed said farm to Gómez, the latter acquired the property from the person who, according to the registry, was the owner thereof; that is to say, from Juan Bautista Román. That sale, according to the provisions of article 36 of the Mortgage Law, is not subject to suits of rescission or determination.

And let it not be argued that because a notice of the filing of the complaint was recorded in the registry, which notice was presented on December 8, 1908, or the day before the public sale, Gómez's claim comes under the first of the exceptions of article 37 of the Mortgage Law, because a record of such notice can produce no greater effects than those of the entry of the cautionary notice of the filing of a complaint which, according to the provisions of article 71, does not prevent the property recorded from being conveyed without prejudice to the rights of the person in whose favor the notice was entered.

The entry of the notice is no proof that the facts alleged in the complaint are true; all it proves is the fact that the complaint has been filed; therefore it cannot be said that Gómez acquired with a knowledge of certain true and positive facts clearly appearing from the registry, but that he acquired knowing that Manuel Jordán Correa had filed a suit claiming the ownership of the property acquired by Gómez, which suit would be decided finally one way or the other according to its merits as brought out at the trial, but by no means on account of the notice of the filing of the complaint recorded in the registry of property.

The entry made in the registry of the notice of the pendency of an action affecting the title or right of possession

of real property can have no effect other than that established in section 91 of the Code of Civil Procedure, to wit, that the purchaser or encumbrancer of the property in litigation is deemed to have constructive notice of the pendency of the action against the parties designated in the notice.

Such entry is essentially the same as that of the cautionary notice of the pendency of an action claiming ownership of real property or property rights referred to in the first subdivision of article 42 of the Mortgage Law, and, consequently, the effect of both notices must be identically the same.

The cautionary notice of a complaint is a temporary measure which does not alter the nature of the obligations or rights which are to be determined in the final disposition of the case, its purpose being no other than to insure the results of the suit without prejudice to such rights as third parties may have in the property involved according to the jurisprudence established by the Supreme Court of Spain in its opinions of June 17, 1875, and July 8, 1876. The same is true as to the cautionary notice in the registry of property of an action claiming ownership.

Should we apply the doctrine set forth in the preceding paragraph to the third party, Manuel Jordán Correa, there can be no question that the right of ownership he is claiming in this suit cannot be altered in his favor by the entry in the registry of the notice of the complaint, nor can such entry prejudice rights already acquired or which may be acquired by third parties subsequently to the entry of the notice, the latter being the case with regard to the defendant, Federico A. Gómez, who, by reason of the entry of the notice in the registry, must necessarily abide the results of the suit. But this does not mean that, with respect to Federico A. Gómez, the result of this suit may be different according as a notice of the complaint has been entered or not. The result must be the same whether a notice has been entered or not. The only difference would consist in that, where a notice

is entered, Federico A. Gómez must abide the consequences
of the judgment, which would not be the case if there has
been no notice; but we will repeat that, whether a notice is
entered or not, the judgment must be the same.

In the case at bar, upon the facts brought out at the
trial and the law applicable thereto, the suit claiming owner-
ship must be dismissed, a decision which, on the other hand,
must necessarily be reached, since the notice of the complaint
was entered in the registry; and the case must be decided in
accordance with our local law and the jurisprudence expound-
ing the same, without resorting to the decisions of American
courts, the scope of which need not be considered or discussed.

We have stated already that it was to the Registry of
Property of Arecibo where Gómez should have gone for the
purpose of ascertaining and verifying who was the real owner
of the property he had purchased in order to recover the
amount Román owed him. The attachment entered in the
registry upon application of Tomás Negrón and Agustín
Viruet shows that the property bought at auction by Gómez
belonged to Juan Bautista Román, against whom the suits
in which the writs of attachment were issued and Gómez had
to accept the result thereof, while no provision of the Civil
Code or of the Mortgage Law compelled him to ascertain
what had been the result of such suit.

Mere presumption cannot divest the defendant, Federico
A. Gómez, of his capacity as third person with respect to
acts and contracts to which he was no party, and in corrobo-
ration of this assertion we shall cite the opinion of the
Supreme Court of Spain, of March 23, 1906, because of the
wise doctrine it contains.

That opinion sets out that the doctrine propounded in
other opinions of said Supreme Court to the effect that who-
soever has a perfect knowledge of the conditions under which
he has acquired a certain right, even where these do not
appear from the registry, cannot allege the capacity of a
third person in order to oppose the annulment of said right,

demand and require by its very nature, in relation with the spirit and purpose of article 34 of the Mortgage Law, that such knowledge be clearly revealed, either through facts which must necessarily strike the senses, as, for instance, those referring to certain apparent servitudes, or through acts performed by the presumed third party himself, because *the admission of presumption, more or less logical and reasonable,* would be in conflict with aforesaid definite principle, and really opposed to its fundamental essence and scope. Wherefore the same Supreme Court has held in its opinion of December 20, 1904, that *contracting parties cannot be compelled to make a legal examination as to the conditions of recorded property,* and that the causes of rescission in such cases, whether arising from the law or from the volition of the parties, must appear in the registry in order to prejudice third persons.

Moreover, under an act to provide for the trial of the right to personal property, approved March 12, 1908 (*sic*), the order for the necessary proceedings directing that the property be sold at public auction may be suspended only by the third party by means of an injunction, which writ was not applied for in the present case; therefore, both the public sale and the execution of the deed awarding the property were legal acts, and the knowledge which Gómez might have acquired through the complaint, or the notice thereof, entered in the registry, as to the fact alleged by Jordán Correa to the effect that he owned the farm of 20 cuerdas, is not by itself sufficient ground for presumption of bad faith on the part of the grantee, Federico A. Gómez, since the records of the registry showed that the property awarded belonged to Juan Bautista Román, from whom Gómez acquired it.

The deed of sale executed in favor of Gómez was recorded in the registry of property, and inasmuch as the record refers to a contract entered into by Gómez with another person who, according to the registry, was qualified for the purpose—

that is to say, Juan Bautista Román—on whose behalf the marshal was acting, the deed cannot but have full legal effect.

Finally, according to article 2 of the Mortgage Law, instruments transferring or declaring ownership of realty or of property rights thereto shall be recorded in the registries of property, and according to article 389 of the same law, from the time this law went into operation no document or instrument which has not been recorded in the registry shall be admitted in the ordinary or special courts, in the councils or offices of the Government, by which interests subject to record are created, conveyed, acknowledged, modified, or extinguished, according to the same law, if the object of the presentation be to enforce, to the prejudice of third persons, the interests which should have been recorded. The dominion title executed in favor of Jordán cannot be maintained against Federico A. Gómez, who has his deed recorded in the registry of property. Neither are the exceptions mentioned in subdivisions 2 and 3 of article 389, just quoted, applicable to Jordán.

The Supreme Court of Spain in its opinion of April 28, 1870, holds that an action claiming ownership based upon a title which has not been recorded in the registry of property is not supported by law, without which requisite it cannot prejudice a third party.

For the foregoing reasons the judgment appealed from is sustained and should, therefore, be affirmed.

I concur in the above opinion.

(Signed)        PEDRO DE ALDREY,
*Associate Justice.*